IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 3, 2021 Session

## STATE OF TENNESSEE v. SIDNEY EUGENE WATKINS

**Appeal from the Circuit Court for Madison County**
**No. 18-527     Kyle C. Atkins, Judge**

_____

### No. W2020-01006-CCA-R3-CD

_____

The Defendant, Sidney Eugene Watkins, was convicted by a jury of alternative counts of possession of marijuana with the intent to sell or deliver and possession of a firearm during the commission of those dangerous felonies, as well as simple possession of methamphetamine, simple possession of alprazolam, and possession of drug paraphernalia. Following the jury verdict, the Defendant renewed his motion for judgment of acquittal regarding the two firearm convictions (counts 7 and 8). The trial court granted the Defendant's motion for judgment of acquittal on the firearm counts, finding the evidence insufficient to support those convictions. The State appeals. Because we conclude that a reasonable jury could have found all of the necessary elements of the crime of possession of a firearm during the commission of a dangerous felony, we reverse the trial court's decision to grant the Defendant's motion for judgment of acquittal and reinstate the convictions for those counts. We remand to the trial court for sentencing on those counts, as well as for correction of the judgment form in count 13 for the reasons stated in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed;
Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellant, State of Tennessee.

J. Colin Morris, Jackson, Tennessee, for the appellee, Sidney Eugene Watkins.

# OPINION
## FACTUAL BACKGROUND

On July 7, 2017, Jackson Police Department ("JPD") officers executed a search warrant at the Defendant's residence. Following that search, a Madison County grand jury, on July 2, 2018, returned a thirteen-count indictment against the Defendant, charging him with the following offenses—possession of a Schedule VI controlled substance, marijuana, with the intent to sell or deliver (counts 1 and 2); possession of a Schedule II controlled substance, methamphetamine, with the intent to sell or deliver (counts 3 and 4); possession of a Schedule IV controlled substance, alprazolam, with the intent to sell or deliver (counts 5 and 6); possession of a firearm, a Winchester 12 gauge shotgun, with the intent to go armed during the commission of the dangerous felonies indicted in counts 1 and 2 (counts 7 and 8); possession of a firearm, a Winchester 12 gauge shotgun, with the intent to go armed during the commission of the dangerous felonies indicted in counts 3 and 4 (counts 9 and 10); possession of a firearm, a Winchester 12 gauge shotgun, with the intent to go armed during the commission of the dangerous felonies indicted in counts 5 and 6 (counts 11 and 12); and possession of drug paraphernalia (count 13). See Tenn. Code Ann. §§ 39-17-417, -17-425, -17-434, -17-1324.

At trial, the State presented the following proof. Multiple officers executed a search warrant at the Defendant's residence during the evening hours of July 7, 2017. The officers discovered a bag of marijuana weighing approximately 11 grams inside a pair of pants in the living room closet and 3 boxes of .38 Special ammunition on the kitchen table, collectively containing over 120 live rounds. In the Defendant's bedroom, officers found the following: a clear plastic bag that contained 21 alprazolam pills lying on top of the Defendant's wallet on the television stand; a small clear bag on the TV stand containing 14 marijuana seeds; a large glass mason jar and glass pipe lying on the TV stand, both having marijuana residue on them; a 12 gauge shotgun shell in a drawer of the TV stand; an unopened bag of 100 Ziploc bags in a drawer of the TV stand; 2 credit cards bearing the Defendant's name on a small table in the middle of the room; also on the small table, loose marijuana, 2 small Ziploc bags, a marijuana grinder with marijuana residue on it, several partially smoked blunts, and a small jar of what appeared to be cannabis oil; inside the bedroom closet, a digital scale with marijuana residue on it and a large glass jar containing "high grade" loose marijuana; on top of the window curtain, a clear bag containing 12 Methylenedioxymethamphetamine ("MDMA") pills; an unloaded 12 gauge Winchester pump shotgun that was behind the TV stand propped up against the wall on top of a pile of clothes; and on the floor, another small glass jar with marijuana residue on it and an opened box of Ziploc bags.

Following entry into the residence, the officers removed the Defendant, Rodricus[1] Johnson, and five small children. The Defendant was arrested, read his Miranda rights, and placed in the back of JPD Sergeant Daniel Washburn's patrol car. Though the officers initially found money in the Defendant's pocket, they did not confiscate the money at that time because they had yet to search the house. Once the Defendant was placed inside the car, his movements and statements were recorded. At one point in the recording, the Defendant appeared to be reaching towards his feet, and when the Defendant was taken out of the patrol car and searched a second time, $340 in cash was found in his sock.

Mr. Johnson was also placed inside the car with the Defendant.[2] On the recording, the Defendant can be heard informing Mr. Johnson that "he was straight" because the Defendant was the one in trouble, not him. The Defendant told Mr. Johnson that "he had about [$200] worth of dope" inside the house and that it was all located in one jar, except for the small amount on the table. The Defendant also referenced a "quarter pound" of marijuana, which was the amount of marijuana found inside the house minus one ounce. The Defendant claimed that he had "never been caught up before" as long as he been doing this, insinuating that had never previously been caught for selling drugs. In addition, the Defendant affirmed that he was "the one in control" because everything was in his bedroom, and he mentioned that he had restocked his narcotics supply the day before his arrest.

On July 8, Sergeant Washburn interviewed the Defendant at the Madison County Jail after the Defendant waived his Miranda rights and signed a written waiver to that effect. According to Sergeant Washburn, the Defendant did not appear to be under the influence of any drugs when he was interviewed, and he seemingly understood the information being conveyed to him. At the conclusion of the interview, the Defendant adopted a written statement. In that statement, the Defendant admitted that he possessed the marijuana on a small table in his bedroom, as well as some alprazolam pills, a marijuana grinder, a 12 gauge shotgun, and a digital scale. Additionally, the Defendant admitted that when the police came to the door, he was in his bedroom. Moreover, he admitted to using and selling marijuana, though he stated that he only sold to his family. However, the Defendant said that the jar of marijuana in his bedroom closet was not his, possibly belonging to Charles Jackson. Sergeant Washburn confirmed that when the officers executed the search warrant, they were looking for Mr. Jackson.

Forensic testing revealed the Defendant's fingerprint on the 12 gauge shotgun. Sergeant Washburn recalled that the Defendant claimed that he possessed the shotgun because there were raccoons at the residence, though Sergeant Washburn acknowledged

---

[1] In the search warrant affidavit, this individual's first name is spelled Rondarrius.

[2] Mr. Johnson was charged in relation to this case and subsequently pled guilty to simple possession of marijuana.

- 3 -

that this information was not included in the Defendant's written statement. In addition, Sergeant Washburn noted that the stock of the shotgun "had been sawed off to kind of a pistol grip," which was inconsistent with hunting use.

JPD Lieutenant Justin Harris, who participated in the search, opined that the Defendant possessed the controlled substances "for resale, based on the amount of marijuana and the digital scale in the same location, the amount of money that was seized off [the Defendant] and all the other pills inside" the Defendant's bedroom. Lieutenant Harris also testified that the shotgun shell found in the TV stand drawer was "within five feet of the shotgun" and that the shotgun could have been loaded "within a matter of seconds." Lieutenant Harris confirmed that the search warrant for the residence "involved another individual," who had not been charged with any crime.

Investigator Nathanial Scohate with the Madison County Sheriff's Office, who was also involved in the search, testified that based upon his experience, he believed the Defendant possessed the marijuana for resale. He based his opinion on the large quantity of loose marijuana inside the mason jar and the presence of digital scales, other drugs, money, and firearms.

Investigator Michael Arnold, who worked in the Jackson-Madison County Metro Narcotics Unit, was qualified as an expert in the narcotics trade, sales, and practices. Investigator Arnold, who also involved in the search, testified that it would take "[l]ess than two" seconds to load the shotgun shell into the shotgun once both items were in the possession of the individual, estimating that the two were roughly "within [an] arm's reach of each other." Investigator Arnold explained that the shotgun was approximately two feet away, "three feet at the most," from the TV stand where the shotgun shell was located. Thus, in Investigator Arnold's opinion, the Defendant could have loaded the shotgun shell into the shotgun in "[a] matter of seconds." In addition, Investigator Arnold noted that the shotgun's stock had been modified so that it resembled a "pistol grip form" and was "wrapped up with what appear[ed] to be electrical tape." Investigator Arnold indicated that all the Defendant would have to do to protect his drugs and money if the need arose would be to pick up the shotgun, regardless of whether the weapon was loaded or not.

Investigator Arnold believed that the Defendant was using the digital scale to "weigh up the bags that he [sold] to his clients" because of the large quantity of drugs found in the residence and the residue found on the scale. According to Investigator Arnold, a drug dealer used a digital scale "[t]o make sure they [made] the most money," so they would not sell too much or too little to their buyers. When asked why someone might keep marijuana seeds, Investigator Arnold replied that someone might remove the seeds "so they can sell a better quality product to their clients." He also noted that the boxes of small Ziploc bags indicated that the Defendant was selling drugs, those types of bags often being

used in packaging for resale. Further, he explained that drug dealers frequently put marijuana in multiple glass mason jars to diminish the marijuana odor.

According to Investigator Arnold, the "collective field weight of the marijuana located inside the apartment" was 86.5 grams and worth approximately $675 in the Jackson area; the 12 MDMA pills contained a little over 3 grams of methamphetamine and were worth approximately $300; and the 21 alprazolam pills would garner between $3 and $5 per pill. In Investigator Arnold's opinion, he believed that the Defendant possessed the various controlled substances for the purpose of resale and the shotgun "to protect his drugs and his money."

Investigator Arnold confirmed that the confidential informant used to secure the search warrant in this case did not say that he saw anyone engaged in selling drugs, only that drugs were present inside the residence. The informant did not provide any information about a firearm.

After the State rested its case, the Defendant made a motion for judgment of acquittal on all counts, arguing that the State failed to present proof of his guilt beyond a reasonable doubt. Specifically, regarding the weapons charges, the Defendant submitted that the shotgun was not loaded, that it was in the corner of the bedroom on top of some clothes, that the Defendant was not observed near the gun, that the shotgun shell was "a great distance" from the weapon, and that the location of the unloaded shotgun did not indicate that it was used to protect the controlled substances. In response, the State noted that the Defendant admitted ownership of the shotgun and that he was in the bedroom, where the shotgun and shell were located, when the officers arrived at his residence to execute the search warrant. Thus, the State argued that based on the totality of the circumstances, including the numerous rounds of additional ammunition found in the kitchen, as well as the fact that Defendant could give the appearance of being armed even if the weapon was unloaded, the jury could reasonably infer that the Defendant possessed the shotgun with the intent to protect his drug trade enterprise. The trial court denied the Defendant's motion as to counts 1 through 6 but reserved ruling on counts 7 through 12; no mention was made of count 13 at that time.

The Defendant declined to offer any proof. The trial court then instructed the jury on all thirteen counts, and closing arguments followed. Following the closing jury instructions, the trial court ruled that it was also denying the motion for judgment of acquittal on count 13. When asked about the disposition of the firearm charges, the trial court simply remarked that those were still under indictment.

All counts were submitted to the jury for their consideration. Following deliberations, the jury found the Defendant guilty as charged in counts 1 and 2 of possession of marijuana with the intent to sell or deliver, as well as finding him guilty in

counts 7 and 8 of possession of firearm during the commission of those dangerous felonies. As for counts 3 through 6 relating to possession of methamphetamine and alprazolam, the jury found the Defendant guilty in each of those counts of the lesser-included offense of simple possession. Correspondingly, because there was no underlying dangerous felony, the jury acquitted the Defendant of the firearm possession charges in counts 9 through 12. The jury found the Defendant guilty as charged in count 13 of possession of drug paraphernalia.[3]

At a subsequent hearing, the Defendant renewed his motion for judgment of acquittal relative to counts 7 and 8[4] (possession of a firearm with the intent to go armed during the commission of the dangerous felonies indicted in counts 1 and 2). The State noted that the officers found a Winchester 12 gauge shotgun in the Defendant's bedroom and that "there was a live 12 gauge shotgun shell in the drawer of the TV stand," which was "within an arm's reach of the shotgun." The State argued that the shotgun was "in a place where [the Defendant] could [have] quickly and readily reduce[d] it to a state where it could [have] be[en] fired." The trial court stated that "a shotgun that was unloaded with one bullet in the room" did not "rise[] to the level of . . . possession of a firearm with the intent to go armed" during the commission of a dangerous felony. The trial court found that based on the totality of the circumstances, the jury's verdicts on the weapons charges were "against the weight of the evidence" because the gun was unloaded and there was only one bullet in the room that was not in close proximity to the weapon.

Thereafter, the trial court issued a written order granting the motion. The trial court reviewed the evidence presented at trial, noting first that the shotgun was found in the room where the drugs were located and that one shotgun shell was found in the room. The trial court then commented that the shotgun was unloaded and that "there was no testimony that [the] Defendant was in the room with the shotgun at the time the warrant was executed." The trial court also commented that there was no proof that the Defendant was in close proximity to the shotgun, that he wielded the gun, or that he intended to use the gun in any way. In conclusion, the trial court stated as follows:

> [W]hen reviewing the evidence, in a light most favorable to the [S]tate and taking the strongest legitimate fear [sic] of the evidence in the [S]tate's favor, including all reasonable inferences, the [c]ourt finds that the proof was insufficient to warrant a conviction for possession of a weapon with the intent to go armed during the commission of a dangerous felony.

---

[3] The uniform judgment sheet for count 13 states that the jury found the Defendant not guilty. However, this is a clerical error because the jury found the Defendant guilty in count 13.

[4] After the jury returned its verdict, counts 7 and 8 were the only firearm offenses that remained.

After a sentencing hearing, the trial court imposed an effective two-year sentence.  This appeal followed.

ANALYSIS

The State appeals, challenging the trial court's decision to grant the Defendant's motion for judgment of acquittal on counts 7 and 8.  Tennessee Rule of Criminal Procedure 29 allows the trial court to "order the entry of judgment of acquittal of one or more offenses charged in the indictment . . . after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."  Tenn. R. Crim. P. 29(b).  A trial court may reserve ruling on a motion for judgment of acquittal made after the close of all evidence, submit the case to the jury, and decide the motion after the jury has returned a guilty verdict.  Tenn. R. Crim. P. 29(d)(2).  "At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence." State v. James, 315 S.W.3d 440, 455 (Tenn. 2010).  A motion for judgment of acquittal raises a question of law, i.e., the legal sufficiency of the evidence, for determination by the trial court.  State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995) (citing State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)).  Accordingly, the decision to grant or deny a motion for judgment of acquittal is reviewed de novo with no presumption of correctness.  State v. Weems, 619 S.W.3d 208, 221 (Tenn. 2021) (citing State v. Little, 402 S.W.3d 202 (Tenn. 2013)).

On appeal, this court applies the same standard of review both to the trial court's denial of a motion for a judgment of acquittal and to the sufficiency of the convicting evidence underlying the jury's verdict.  State v. Carroll, 36 S.W.3d 854, 869 (Tenn. Crim. App. 1999) (citing State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998)). Therefore, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State.  See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict."  Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility."  State v. Cooper, 736 S.W.2d

125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Relative to this case, "[i]t is an offense to possess a firearm or antique firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." Tenn. Code Ann. § 39-17-1324(a). A person acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). "A felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance of controlled substance analogue" is a dangerous felony. Tenn. Code Ann. § 39-17-1324(i)(1)(L).

"Possession may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). "[A]ctual possession refers to physical control over an item," while "constructive possession requires only that a defendant have 'the power and intention to exercise dominion and control over' the item allegedly possessed." State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014) (quoting Shaw, 37 S.W.3d at 903). Whether a defendant constructively possessed contraband "depends on the totality of the circumstances in each case," and constructive possession "may be proven by circumstantial evidence." Robinson, 400 S.W.3d at 534 (citing Tenn. Code Ann. § 39-17-419).

On appeal, the State argues that the trial court erred when it granted the Defendant's motion for judgment of acquittal on counts 7 and 8 because the trial court weighed the evidence in a light unfavorable to the State instead of determining whether the evidence was sufficient to support the convictions. The State notes that that trial court explicitly concluded that the jury's verdicts on the weapons charges were "against the weight of the evidence," though the trial court was prohibited from doing so, and asks this court to reinstate the verdicts, citing to Weems, 619 S.W.3d 208. In addition, the State asserts that the trial court erred by failing to view the evidence in the light most favorable to the State, observing that this court has not focused upon whether the particular firearm was

operational, but whether the firearm was designed to fire, citing State v. Anthony Eugene Barnett, No. M2017-02317-CCA-R3-CD, 2019 WL 1057386, at *4 (Tenn. Crim. App. Mar. 6, 2019). The State surmises that the trial court failed to afford it all reasonable and legitimate inferences that could be drawn from the evidence. The Defendant responds by citing to the trial court's ruling granting the motion for judgment of acquittal and asserts that the motion was timely made and that the trial court "granted it based on the proper legal reason."

In Weems, a jury convicted the defendant of aggravated child neglect and reckless homicide following the death of her six-month-old daughter. 619 S.W.3d at 209. The autopsy investigation determined that the victim's primary cause of death was malnutrition and dehydration and that the circumstances of her death were neglect. Id. The defendant was adamant in her statements to law enforcement that she fed the victim, and medical records showed that the defendant took the victim to all of her regularly scheduled doctors' appointments. Id. at 209-210. After the jury's verdict, the defendant, pursuant to Rule 29 of the Tennessee Rules of Criminal Procedure, renewed her motion for judgment of acquittal as to both charges. Id. at 219. The trial court concluded that "the evidence was not sufficient" as to the aggravated child neglect charge and granted the motion for acquittal as to that charge. Id. The trial court held that "observing the evidence in the light favorable to the prosecution," it "d[id] not accept the verdict in [c]ount 1 for insufficient evidence regarding [the defendant's] mens rea of 'knowing,'" a necessary element for conviction. Id. at 220. The State appealed the trial court's decision partially granting the motion for judgment of acquittal, and this court affirmed, reasoning, "It is unclear what happened in the last few days of [the victim's] short life" but the "the evidence was insufficient to prove that [the defendant] knowingly did not feed [the victim] or knowingly neglected [the victim]." Id.

However, our supreme court reversed and reinstated the defendant's conviction for aggravated child neglect, concluding that "the jury could have made a reasonable and legitimate inference from the evidence that [the defendant's] statements that she fed [the victim] were not credible based on the medical and scientific evidence provided by" the State. Weems, 619 S.W.3d at 223. The court recognized the long-standing principle "that a defendant's mental state, often an essential element in criminal statutes, is often proved by circumstantial evidence, which by its very nature requires the jury to make inferences and draw conclusions based on all of the evidence presented." Id. (citing Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973); State v. Jeffrey Antwon Burns, No. M1999-01830-CCA-R3-CD, 2000 WL 1520261, at *3 (Tenn. Crim. App. Oct. 13, 2000)). After reciting the specifics of the trial court's ruling in that case, the Weems Court observed,

It appears that while the trial court essentially correctly identified the standard of review [i.e., "observing the evidence in the light favorable to the

- 9 -

prosecution"], it failed to disregard certain points of countervailing evidence or recognize the jury's ability to make inferences and conclusions from the evidence presented. Instead, the trial court appears to have made its own assessment of the credibility of [the defendant] and Ms. Owens' [the daycare owner where the victim attended] testimony and assigned it more weight than the medical testimony that showed [the victim] suffered from chronic malnutrition and dehydration.[5]

Whether or not the trial court agreed with the credibility determinations of the jury, the weight the jury assigned specific testimony and evidence, or the conclusions the jury drew from the evidence is not of consequence to this appeal only because that is not what the trial court must do when ruling on a motion for judgment of acquittal. Those determinations are relevant only to the trial court's decision to accept the jury's verdict in its role as thirteenth juror. See State v. Ellis, 453 S.W.3d 889, 898-901 (Tenn. 2015) (differentiating the trial court's role when reviewing the legal sufficiency of the evidence and the trial court's role as thirteenth juror, the latter inquiry not requiring the "trial judge . . . to view the evidence in the light most favorable to the prosecution" and permitting the trial judge to "weigh the evidence himself as if he were a juror and determine for himself the credibility of the witnesses" (quoting State v. Johnson, 692 S.W.2d 412, 415 (Tenn. 1985) (Drowota, J., dissenting))).

Id. at 223-24.

Here, though the trial court initially commented at the subsequent motion hearing that based on the totality of the circumstances, the jury's verdicts were against the weight of the evidence, it identified the appropriate standard of review in its written order when it reviewed the sufficiency of the evidence, stating, "[W]hen reviewing the evidence, in a light most favorable to the [S]tate and taking the strongest legitimate fear [sic] of the evidence in the [S]tate's favor, including all reasonable inferences[.]" However, just as Weems, we conclude that the trial court made its own assessment of the evidence and the credibility of witnesses.

The Defendant in his written statement admitted that the shotgun belonged to him, that he was in his bedroom where the gun was located when the police came to the door,

---

[5] Our supreme court noted that this court "similarly identified the correct standard of review and then proceeded to reweigh the evidence and the credibility of the witnesses, while disregarding the jury's ability to make reasonable inferences and conclusions from the evidence presented at trial." Weems, 619 S.W.3d at 223 (citing State v. Shalonda Weems, No. M2018-02288-CCA-R3-CD, 2020 WL 119618, at *16-18 (Tenn. Crim. App. Jan. 10, 2020)).

and that he sold drugs. A fingerprint found on the shotgun matched the Defendant's. In addition, 3 boxes of .38 Special ammunition were on the kitchen table, collectively containing over 120 live rounds. Investigator Scohate testified that based upon his experience, he believed the Defendant possessed the marijuana for resale given the large quantity of loose marijuana inside the mason jar and the presence of digital scales, other drugs, money, and firearms.

Also, as noted above, a defendant's mental state is often proved through circumstantial evidence. Investigator Arnold indicated that the shotgun's stock had been modified so that it resembled a "pistol grip form" and was "wrapped up with what appear[ed] to be electrical tape." Sergeant Washburn recalled that the Defendant claimed that he possessed the shotgun to exterminate raccoons at his residence; however, Sergeant Washburn noted that the stock of the shotgun "had been sawed off to kind of a pistol grip," which was inconsistent with hunting use.

Lieutenant Harris also testified that the shotgun shell found in the TV stand drawer was "within five feet of the shotgun" and that the shotgun could have been loaded "within a matter of seconds." Investigator Arnold testified that the shotgun and shotgun shell were roughly "within [an] arm's reach of each other" and that it would take "[l]ess than two" seconds to load the shotgun. Investigator Arnold recalled that the shotgun was approximately two feet away, "three feet at the most," from the TV stand where he located the shotgun shell. Thus, in Investigator Arnold's opinion, the Defendant could have loaded the shotgun shell into the shotgun in "[a] matter of seconds." Investigator Arnold indicated that all the Defendant would have to do to protect his drugs and money if the need arose would be to pick up the shotgun, regardless of whether the weapon was loaded or not. In Investigator Arnold's opinion, he believed that the Defendant possessed the various controlled substances for the purpose of resale and the shotgun "to protect his drugs and his money."

Here, in its written order granting the motion for judgment of acquittal, the trial court commented that the shotgun was unloaded, that only one shotgun shell was found in the bedroom, and that "there was no testimony that [the] Defendant was in the room with the shotgun at the time the warrant was executed." The trial court commented that there was no proof that the Defendant was in close proximity to the shotgun, that he wielded the gun, or that he intended to use the gun in any way.

As noted above, the Defendant stated to the police that he was in his bedroom when the police came to the door. In this case, the State was not required to prove that the Defendant wielded or used the weapon for the jury to find all of the necessary elements of possession of a firearm with the intent to go armed during the commission of a dangerous felony. See, e.g., State v. Cedarius J. Robertson, No. W2020-00365-CCA-R3-CD, 2021 WL 2189998, at *5 (Tenn. Crim. App. May 28, 2021) (affirming conviction for being a

convicted felon in possession of a firearm and possessing a handgun while under the influence because the evidence showed that a loaded Ruger nine-millimeter pistol was on the floorboard at the defendant's feet when he was stopped for DUI, though the defendant told the officer that a passenger was in his truck earlier and that the gun must belong to his passenger), perm. app. denied (Tenn. Sept. 22, 2021); State v. Buddy Wayne Mooney, No. W2019-01309-CCA-R3-CD, 2020 WL 2765847 (Tenn. Crim. App. May 27, 2020) (affirming sufficiency of the evidence for possession of a firearm during the commission of a dangerous felony conviction when the defendant, who was seated in the driver's seat of a parked car, had the power over and the ability to exercise control of the firearm that was in a bag in the passenger's side floorboard); Anthony Eugene Barnett, 2019 WL 1057386, at *4 (affirming conviction for possession of a firearm with the intent to go armed, reasoning that the statute does not require a showing that the gun could fire but only requires a showing that it was "designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use." (citing Tenn. Code Ann. § 39-11-106(11))). However, questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See Bland, 958 S.W.2d at 659.

Accordingly, we reverse the ruling of the trial court granting the Defendant's motion for judgment of acquittal as to counts 7 and 8 and reinstate the convictions in those two counts.[6] Also, on remand, the judgment form for count 13 needs to be corrected to reflect that the jury, in fact, found the Defendant guilty rather than not guilty of that offense, as well as to include any sentence imposed.[7]

As a final note, we note that just as in Weems, we are presented with the trial court's decision on a renewed motion for judgment of acquittal following the jury's verdict, not the trial court's decision as a thirteenth juror. Also, just as in Weems, the record does not reflect any ruling by the trial court on a motion for new trial, and we, therefore, express no opinion and make no determination on this issue. See Weems, 619 S.W.3d at 224.[8]

CONCLUSION

Based on the evidence presented at trial, we conclude that a reasonable jury could have determined that the State proved all of the necessary elements of possession of a

---

[6] It does not appear that sentences were imposed for counts 7 and 8, their being dismissed prior to sentencing. We note that after sentences are imposed upon remand, these counts would merge.

[7] A transcript of the sentencing hearing is not included on appeal; accordingly, it is unclear whether a sentence was imposed in this count. If no sentence was imposed, then one must also be imposed for this count on remand.

[8] Though we express no opinion on the issue, we feel constrained to note that nothing in our opinion or the Weems opinion precludes the Defendant from filing a motion for new trial on remand and seek for the trial court to specifically review the evidence as thirteenth juror.

firearm with the intent to go armed during the commission of a dangerous felony. Therefore, we reverse the trial court's decision granting the motion for judgment of acquittal as to counts 7 and 8 and reinstate the jury's verdict. We remand this case for a further proceedings consistent with this opinion in to include sentencing on counts 7 and 8 and a corrected judgment form in count 13.

_____
D. KELLY THOMAS, JR., JUDGE